FILED
2012 Jan-12  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEFFERY DAUGHERTY,** | ) | |
| | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-1371-AKK** |
| **ATLANTA CRANE &** | ) | |
| **AUTOMATED HANDLING,** | ) | |
| **INC.,** | ) | |
| | ) | |
| Defendant / Counter-Claimant. | ) | |

## ORDER AND MEMORANDUM OPINION

Before the court are Atlanta Crane & Automated Handling, Inc.'s ("Atlanta Crane") motion for summary judgment on all claims asserted by Jeffery Daugherty ("Daugherty"), doc. 25; Daugherty's motion for summary judgment on all counterclaims asserted by Atlanta Crane, doc. 26; and Daugherty's motion for leave to file surreply, doc. 37.  For the reasons stated more fully herein, Atlanta Crane's motion is **DENIED** as it relates to the breach of contract and Alabama Sales Representative's Commission Contracts Act claims, counts (I) and (IV), and **GRANTED** in all other respects.  Daugherty's motion for summary judgment is **GRANTED** as it relates to the Computer Fraud and Abuse Act, breach of contract, tortious interference, and attorney's fees under GA. CODE ANN. § 13-6-11 claims, and **DENIED** in all other respects.  Daugherty's motion for leave to file surreply is

**DENIED**.

## I.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c).  Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Daugherty's employment with Atlanta Crane, an entity that sells cranes, manufactures conveyer systems, installs these systems, and provides maintenance services to its customers. *See* doc. 1; doc. 25-6, at 4. Daugherty served as an Alabama sales representative for Atlanta Crane from August 2004 until October 2009. *See* doc. 25-3, at 3, 5.  Dennis Bethel ("Bethel"), owner of Atlanta Crane, originally hired Daugherty. *See* doc. 25-6, at 4.[1]  Atlanta Crane and Daugherty orally agreed that Daugherty would work with a draw against commission compensation package where his sales commissions would pay down an annual salary of $48,000.  Doc. 25-3, at 10.  Atlanta Crane structured Daugherty's commissions as thirty percent (30%) of the first $100,000 in gross

---

[1] Dennis Bethel testified as Atlanta Crane's corporate representative pursuant to FED. R. CIV. P. 30(b)(6).  *See* doc. 27-7, at 3.

profit, thirty-five percent (35%) of the next $100,000 in gross profit, and forty percent (40%) of the next $100,000 in gross profit, with the accumulated amount of gross profits resetting each year. *Id.* at 17. The parties based the terms of Daugherty's compensation package on "verbal understandings," but Atlanta Crane also printed Daugherty's commission percentage on his pay stub. *Id.* at 16. In 2007 or 2008, the parties orally restructured Daugherty's commissions package so that his percentages increased to 35%, 40%, and 45% for each $100,000 in gross profit accumulated. *Id.* at 17; doc. 25-6, at 25.

The parties heavily dispute the facts pertaining to Daugherty's performance as a sales representative and the calculation of his commissions. *See generally* doc. 25-1, at 6; doc. 25-4, at 2; doc. 34, at 3-13. Daugherty maintains that Atlanta Crane failed to sufficiently credit commissions earned on several projects. Doc. 33-1, at 1. Specifically, Daugherty claims unpaid commissions on the A-Jin, Cardington Yutaka, Concours Mold, EG&G, Industrial Galvanizers, Goodgame Welding, Haver Filling Systems, Liberty Construction, MP Tech, and Tennessee Valley Contractors projects. Doc. 34, at 8. Daugherty maintains, although Atlanta Crane disputes, *see* doc. 25-1, at 10-12; doc. 35, at 6-8, that despite performing sufficient duties to earn commissions as a sales representative in the industry, Atlanta Crane paid him no commissions for the Concours Mold, Goodgame Welding, Haver Filling Systems, Liberty Construction, and Tennessee Valley Contractors projects. *See* doc. 33-1, at 1-2; doc. 33-7; doc. 34, at 8-10. Moreover, for the remaining projects, Daugherty asserts that Atlanta Crane erroneously

calculated and credited commissions earned.  Doc. 33-1, at 3; doc. 33-7.

Daugherty claims over $300,000 in unpaid commissions.  Doc. 34, at 12.

While working for Atlanta Crane, Daugherty used a personal laptop computer and Atlanta Crane's Microsoft Outlook email address ("Outlook") to write business emails, keep sales notes, and maintain customer contact information.  *See* doc. 25-7, at 23; doc. 25-4, at 24.  Atlanta Crane maintained a Virtual Private Network ("VPN") or "server" for its business operations; however, the parties dispute whether this system required an employee to access the VPN server in order to use Outlook.  Doc. 25-8, at 4; doc. 27-1, at 3.  During his employment with Atlanta Crane, Daugherty kept pertinent sales notes and customer information in the "Notes" portion of his Outlook account.  Doc. 25-4, at 24.  Daugherty's Outlook account "contained important information regarding on-going contract negotiations, the status of and detailed notes regarding on-going projects, and future sales opportunities."  Doc. 32, at 6 (citing doc. 25-4, at 24-25).  Atlanta Crane contends that Daugherty gathered all such information while employed with Atlanta Crane and that Daugherty's Outlook account automatically synchronized with the Atlanta Crane VPN server such that the server saved the Outlook information.  Doc. 25-8, at 4-5.  Daugherty, however, asserts that he was unaware of any VPN server synchronization or that the Atlanta Crane server automatically saved information from his Outlook account.  Doc. 25-4, at 23-25.  Daugherty never received formal training or information regarding Atlanta Crane's VPN server, and Bethel installed the software on Daugherty's laptop

computer.  *Id.* at 23.

In October 2009, Daugherty left Atlanta Crane for Gorbel.  Doc. 27-1, at 3.
Prior to leaving Atlanta Crane, Daugherty exported contact information from his
laptop computer to the Gorbel server.  Doc. 25-5, at 7.  To do so, Daugherty
emailed the Gorbel IT Department using his Atlanta Crane email account and
requested help in completing the file transfer.  Doc. 25-7, at 22-23.  Atlanta Crane
contends that Daugherty, through this exportation process, purposefully removed
and deleted Atlanta Crane company property.  Moreover, "[a]s a direct result of
[Daugherty's] intentional conduct, Atlanta Crane lost numerous job leads; critical
data regarding on-going projects which resulted in Atlanta Crane being paid less
than the full contract price for its work; and pricing information which had been
quoted to potential customers."  Doc. 32, at 7 (citing doc. 25-7, at 23; doc. 25-8, at
9-11).  Information removed from Atlanta Crane's VPN server is permanently
deleted.  Doc. 25-8, at 10.  Daugherty maintains that all information transferred to
Gorbel came from the hard-drive of his personal laptop, and accordingly, he did
not access, or delete any information from, Atlanta Crane's server during the file
transfer process.  Doc. 27-1, at 3-4.  The parties agree that Atlanta Crane is a
customer, not a competitor, of Gorbel.  Doc.  25-8, at 12.  However, Atlanta Crane
contends that the supposedly confidential information Daugherty exported to
Gorbel could be used to benefit Atlanta Crane's competitors.  *Id.* at 13-14.

Daugherty filed suit against Atlanta Crane on May 28, 2010, for the alleged
unpaid commissions, doc. 1, and Atlanta Crane filed counterclaims against

Daugherty on July 7, 2010, for the alleged destruction and transfer of its confidential information, doc. 7.  The parties separately moved for summary judgment on all the respective claims against them, docs. 25, 26.  Daugherty also moved the court for leave to file surreply, doc. 37.  These motions are fully briefed, docs. 32, 33, 34, 35, 36, 38, and ripe for adjudication.

## III.   ANALYSIS

### A.   Atlanta Crane's Summary Judgment Motion

Initially, Daugherty pursued claims against Atlanta Crane for (I) breach of contract, (II) work and labor performed, (III) unjust enrichment, and (IV) violation of Alabama's Sales Representative's Commission Contracts Act.  Doc. 1, at 3-5.  However, in response to Atlanta Crane's motion, Daugherty abandoned his claims for work and labor performed and unjust enrichment, doc. 34, at 1 n.1, and accordingly, Atlanta Crane's motion is **GRANTED** as it relates to these claims. The court addresses Atlanta Crane's motion on the breach of contract and violation of the Sales Representative's Commission Contracts Act claims below.[2]

### i.   *Breach of Contract*

Daugherty alleges that Atlanta Crane breached its contractual agreement to pay commissions for certain sales occurring in 2008, 2009, and 2010.  Doc. 1 ¶¶ 14-16.  Although Atlanta Crane admits to the existence of an oral agreement, it argues first that such an agreement is unenforceable under Alabama's Statute of

---

[2] The court maintains subject matter jurisdiction over Daugherty's state law claims pursuant to 28 U.S.C. § 1332.  *See* doc. 1 ¶¶ 1-3.

Frauds.  *See* doc. 25-1, at 8-9; doc. 25-1, at 4 ("The parties orally agreed Plaintiff would be hired on a salary versus commission basis; that is, Plaintiff would take a draw against his unearned commissions in the form of a salary.").  The court disagrees.

> Alabama's Statute of Frauds provides in pertinent part:
>
> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: (1) Every agreement which, by its terms, is not to be performed within one year from the making thereof . . . .

ALA. CODE § 8-9-2(1) (1975).  To satisfy this provision, "the agreement must not be capable of being performed within one year."  *Stephens v. Stephens*, 680 So. 2d 329, 333 (Ala. Civ. App. 1996).  Indeed, a "contract is not brought within the statute by the fact that the full performance within a year is highly improbable, nor by the fact that the parties may not have expected that the contract would be performed within the year."  *Id.* (quotation marks and citations omitted).  As such, the Statute of Frauds is inapplicable where "there is a possibility of its being performed within a year, *and* there is no stipulation that it shall not be so performed."  *Id.* (emphasis added).

For example, in *Stephens* the court considered a promissory note made payable over a period of five years, but found the Statute of Fraud inapplicable because "the promissory note is capable of being paid within one year from the date of its making, as there is no provision contained in the note that would

prevent its full payment or satisfaction within one year." *Id.* Likewise, in *Trum v. Melvin Pierce Marine Coating, Inc.*, the court found that the Statute applied as plaintiff "entered into an agreement with the defendants whereby he was to be employed for a period of four years." 562 So. 2d 235, 236 (Ala. 1990). The *Trum* court asserted that, unlike the classic "employment for life" situation, "[h]ad the plaintiff in the present case died in his first year of employment, the contract would have terminated prematurely; it would not have been performed." *Id.* (citing *Kitsos v. Mobile Gas Serv. Corp.*, 404 So. 2d 40 (Ala. 1981)). The plaintiff in *Trum* promised to work for four years, an obligation not capable of performance within one year. Similarly, in *Cox Nuclear Pharm., Inc. v. CTI, Inc.*, the Eleventh Circuit upheld a finding that the Statute voided an oral noncompete agreement because "deposition testimony made clear that the alleged noncompetition agreement was to continue for more than one year." 478 F.3d 1303, 1309 (11th Cir. 2007). The party seeking to enforce the oral agreement testified that he "'certainly expected eight to ten years' of noncompetition." *Id.* at 1310 (citations omitted). The court found such testimony sufficient to show that the agreement "was not intended to be performed within a year." *Id.*

Here, the record provides that, "by its terms," the oral agreement regarding Daugherty's compensation structure *could* be performed within one year, and the parties did not expressly stipulate otherwise. It is undisputed that Atlanta Crane hired Daugherty "on a salary versus commission basis." In other words, Atlanta Crane paid Daugherty an annual salary through a "draw against his unearned

commissions." Doc. 25-3, at 10; doc. 25-6, at 6. Under this agreement, Daugherty's sale commissions went to pay down the salary amount, and Daugherty would also receive any commissions accumulated beyond the annual salary. Doc. 25-3, at 10. Atlanta Crane calculated Daugherty's commission amounts through a graduated percentage of accumulated "gross profits" from his sales, and it reset this accumulation annually. *Id.* at 16-17. Significantly, Atlanta Crane posits no evidence demonstrating that such an agreement cannot be performed within the year. Rather, by its very terms, the agreement is annually structured. At the end of one year, it is entirely possible, if not expected, that Daugherty would receive enough commissions to cover his salary. Even though Atlanta Crane contends that Daugherty failed to properly perform the terms of the agreement within one year as his salary continually exceeded his commissions, *see* doc. 25-1, at 9, such an argument misses the mark for a Statute of Frauds analysis because the agreement's terms generated "a possibility of its being performed within a year." *Stephens*, 680 So. 2d at 333 (citations omitted). *See also* doc. 25-7, at 17 (Bethel, the owner and corporate representative of Atlanta Crane, stating that Atlanta Crane could have fired Daugherty at the end of one year). Moreover, the court is unable to find "an express agreement or stipulation by the parties that prevented [the compensation contract] from [being] fully perform[ed] within a one-year period." *Stephens*, 680 So. 2d at 333. Therefore, there is a valid binding agreement between the parties, *see* doc. 34, at 16-17, and, as such, the court must consider Atlanta Crane's alleged breach of this agreement.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002). The court has considered the pleadings, the submissions of the parties, and the relevant law, and determines that genuine issues of material fact remain with respect to Daugherty's breach of contract claim. Particularly, a reasonable jury could conclude that Atlanta Crane breached the agreement by failing to credit Daugherty with the proper commission for certain projects and by refusing to pay any commission to Daugherty for other projects.

Before briefly addressing the factual disputes at issue, the court finds it prudent to discuss Daugherty's motion for leave to file surreply, doc. 37. Daugherty argues that Atlanta Crane's reply brief for its summary judgment motion, *see* doc. 35, is essentially a motion to strike, and as such, Daugherty "deserves an opportunity to respond." Doc. 37. The court **DENIES the motion for leave to file surreply as MOOT**. Atlanta Crane asserts that documents produced in conjunction with Daugherty's response, doc. 33, constitute inadmissible hearsay and "should be struck by this Court." Doc. 35, at 3. Specifically, Atlanta Crane contends that the records attached to Daugherty's affidavit, *see generally* doc. 33-1, at 5-79, which purport to be Atlanta Crane records:

> [W]ere not produced by Defendant; Defendant's corporate

> representative was not deposed as to the documents' authenticity or whether the documents were business records . . . . [A]nd, the various email declarants from third party companies interwoven in to the alleged contract documents have not been deposed or otherwise provided any testimony as to the authenticity of the communications (nor has Plaintiff for that matter) or the alleged records kept of such communications.

Doc. 35, at 4-5. However, the court does not need to consider this potentially inadmissible evidence alluded to by Atlanta Crane because Daugherty provides other evidence that could be "reduced to admissible form" precluding summary judgment on his breach of contract claim.[3]  *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

First, Daugherty's affidavit, doc. 33-1, at 1-4, contains statements of personal knowledge regarding his actions with the Concours Mold, Haver Filling Systems, Liberty Construction, and Goodgame Welding projects.  Daugherty retains personal knowledge of the sales he allegedly made, thus this affidavit is properly before the court at the summary judgment phase.  *See* FED. R. CIV. P. 56(c)(4).  While Daugherty maintains that he sufficiently performed under the oral agreement to earn commissions for these sales, Bethel contends that Daugherty failed to do so.  *See* doc. 25-6, at 18-19 (testifying that Daugherty performed *no* work on the Concours Mold, Haver Filling Systems, and Liberty Construction projects and that Daugherty performed insufficient work to earn a commission for

---

[3]  While the court does not rely on the documents that Daugherty attached to his Affidavit, *see* doc. 33-1, at 5-79, the court makes no determination at this juncture on the trial admissibility of these documents.

the Goodgame Welding project).  Moreover, Atlanta Crane's spreadsheets, as admitted in Bethel's deposition, *see* doc. 33-3; doc. 25-7, at 5-8, list Daugherty as the sales representative for the Tennessee Valley Construction project, but Daugherty states that he received no commission for this project.  Furthermore, Atlanta Crane offers no specific evidence on the duties required for Daugherty to receive a commission on these projects.  Doc. 25-6, at 9-13.  Instead, Bethel continuously asserts in his deposition that the duties "depend[] on the job" because "[t]here's such a variety of projects."  *See id.* at 10.  Taking Daugherty and Bethel's testimony in the light most favorable to Daugherty as the nonmoving party, a reasonable jury could conclude that Daugherty sufficiently "made the sale" for these projects such that he was entitled to a commission.

Second, a reasonable jury could find that Atlanta Crane underpaid Daugherty for the remaining projects.  For the A-Jin, MP Tech, and Yutaka Tech projects, Daugherty submits sufficient and admissible evidence for a reasonable jury to conclude that the actual income Atlanta Crane received from the customer exceeded the amount Atlanta Crane used to calculate "gross profit" for the project—thus causing an erroneous commission calculation.  *See* doc. 33-3, at 2, doc. 25-7, at 9, doc. 33-4, at 4 (A-Jin); doc. 33-3, at 9, doc. 25-7, at 11, doc. 33-6, at 7 (MP Tech); doc. 33-3, at 11, doc. 25-7, at 13, doc. 33-6, at 12 (Yutaka Tech). Finally, given testimony regarding Daugherty's compensation package and the Atlanta Crane spreadsheets authenticated by Bethel at deposition, *see* doc. 25-7, at 15-17, doc. 33-2, a jury could find that Atlanta Crane also erroneously calculated

Daugherty's commissions for the EG&G and Industrial Galvanizers projects.  *See* doc. 33-3, at 4; doc. 33-3, at 7.  While Daugherty may not have "adjusted for cost overages, labor cost overages, non-payment or under-payment of the contract amount, or any other cost subtraction from the gross profit throughout the life of the job," as Atlanta Crane maintains, doc. 35, at 8, this is a fact for the jury to consider, along with Daugherty's evidence, to ascertain whether Atlanta Crane owes Daugherty any commissions.  However, as it relates to the motion pending before this court, Daugherty survives summary judgment because he has produced sufficient data and other relevant evidence for a jury to find that Atlanta Crane underpaid and/or wrongfully refused to pay commissions earned by Daugherty, thereby breaching the oral compensation contract.  Accordingly, Atlanta Crane's motion on the breach of contract claim is **DENIED**.

    ii.    *Sales Representative's Commission Contracts Act*

Alabama law provides statutory remedies against certain entities who wrongfully refuse to pay commissions.  The statute provides in relevant part:

> All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination.  Commissions that become due after the termination date shall be paid within thirty days after the date on which the commissions become due.

ALA. CODE § 8-24-2(c).  Moreover, a principal failing to comply with this section "is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court

costs." ALA. CODE § 8-24-3.  The statute defines "principal" as:

> Any person who does all of the following:
>
> a. Engages in the business of manufacturing, producing, importing, or distributing a product or products *for sale to customers who purchase the product or products for resale*.
>
> b. Utilizes sales representatives to solicit orders for the product or products.
>
> c. Compensates the sales representatives, in whole or in part, by commission.

ALA. CODE § 8-24-1(2) (emphasis added).  Finally, the statute defines "sales representative" as "[a]ny person who engages in the business of soliciting, on behalf of a principal, orders for the purchase at wholesale of the product or products of the principal, but does not include a person who places orders or purchases for his or her own account for resale, or a person engaged in home solicitation sales." ALA. CODE § 8-24-1(3).  In *RMC & Associates, Inc. v. Beasley*, 958 So. 2d 879, 884 (Ala. Civ. App. 2006), the court found this statute inapplicable when the sales representative sells to an "end user."  Put differently, only a "principal" can face liability under this statute, and if an entity's customers are "end users" then that entity cannot constitute a "principal." *Id.* ("Because the transaction at issue on this appeal was a sale to an end user, RMC was not a 'principal' and Beasely was not a 'sales representative' within the meaning of the Alabama Act.").

The parties dispute whether Atlanta Crane is a "principal" for certain

projects or sales allegedly made by Daugherty.[4]  While Daugherty admits that the

A-Jin, Concours Mold, Haver Filling, Industrial Galvanizers, MP Tech, and

Yutaka Tech costumers did not purchase Atlanta Crane products for resale, and

accordingly the statutory provisions are not applicable to the allegedly unpaid

commissions for these projects, *see* doc. 33-1, at 4; doc. 34, at 22, Daugherty seeks

statutory damages for unpaid commissions on the EG&G, Goodgame Welding,

Liberty Construction, and Tennessee Valley Construction projects.  Doc. 34, at 22.

Atlanta Crane argues that its customers for these remaining projects were general

contractors who categorically constitute "end users" and that the court should

dismiss Daugherty's claim for statutory damages in its entirety because Atlanta

Crane does not constitute a "principal," as defined by the statute.  Doc. 35, at 10.[5]

Daugherty counters that general contractors are *not* in fact "end users [because]

they *sell* to end users."  Doc. 34, at 22 (emphasis in original).  Stated differently,

Daugherty argues that the Sales Representative's Commission Act is applicable

---

[4] To determine whether an entity is a "principal" for purposes of ALA. CODE § 8-24-1(2), the court must look to the specific nature of the particular sale in question—not the broad nature of the entity's business.  *RMC & Assocs*, 958 So. 2d at 883-84.

[5] Atlanta Crane also argues in its reply brief, doc. 35, at 10, that Daugherty cannot recover statutory damages for the Liberty Construction and Goodgame Welding projects because "he has not specifically pled any claim related to these jobs."  *Id.* (citing doc. 1 ¶¶ 9-10).  This argument is untimely because it was first raised in Atlanta Crane's reply brief.  Moreover, the argument also falls short on the merits because Daugherty's complaint alleges unpaid commissions and provides a non-exclusive list of projects where Atlanta Crane purportedly failed to pay Daugherty: "Plaintiff obtained sales and otherwise completed all duties necessary to be paid agreed commissions earned in 2008, 2009, and 2010 on jobs which Defendant has not paid Plaintiff anything on his agreed commission, *including but not limited to* the following customers . . . ."  Doc. 1 ¶ 9 (emphasis added).

because Atlanta Crane sells its products to these general contractors who subsequently resell the products to end users.

Based on the plain language of ALA. CODE §§ 8-24-1(2) and 8-24-2(b), the court finds a genuine issue of fact exists as to whether the EG&G, Goodgame Welding, Liberty Construction, and Tennessee Valley Construction general contractors/customers "purchase[d] the [Atlanta Crane] product or products for resale." *See* ALA. CODE §§ 8-24-1(2).  Again, taking all reasonable inferences in the nonmoving party's favor, the court finds that Daugherty goes beyond the pleadings to establish an issue of fact regarding the specific nature of the sales between Atlanta Crane and its general contractor customers.  First, there is sufficient evidence in the record for a reasonable jury to find that Atlanta Crane failed to fully compensate Daugherty for commissions earned on these four projects, *see supra*.  Second, in his affidavit, doc. 33-1, at 3-4, Daugherty testified, using personal knowledge, that Atlanta Crane's customers for these four projects were *not* "end users."  Finally, contrary to Atlanta Crane's assertion, its corporate representative, Bethel, did *not* testify that "each and every client for which Plaintiff claims a commission is owed under the Act is an end user."  *See* doc. 25-1, at 16 (citing doc. 25-8, at 12-13).[6]

---

[6] In relevant part, Bethel testified as follows:

> Q: Who was your contract with?
> A: Tennessee Valley.
> Q: Okay.  They were a general contractor?
> A: Yes, yes.

Therefore, Atlanta Crane's summary judgment motion on the Sales Representative's Commission Act is **DENIED**.  Assuming a jury concludes that Atlanta Crane wrongfully refused to pay Daugherty commissions earned for the EG&G, Goodgame Welding, Liberty Construction, and Tennessee Valley Construction projects *and* that Atlanta Crane's customers for these projects purchased products *for resale*, Daugherty may recover treble damages under ALA. CODE § 8-24-3.

**B.     Daugherty's Summary Judgment Motion**

Atlanta Crane filed counterclaims against Daugherty stemming from Daugherty's use of allegedly protected customer information.  *See generally* doc. 7, at 10-24.  Specifically, Atlanta Crane alleges: (I) violation of the federal Computer Fraud and Abuse Act; (II) breach of fiduciary duty; (III) breach of contract; (IV) violation of the Georgia Trade Secrets Act; and (V) violation of the

---

Q: Liberty Construction, who was your contract with?
A: With Liberty Construction.
Q: They are a contractor?
A: They are a contract - - they are not a general contractor.  He is a contract facilitator.
Q: Okay.  But not the end user?
A: He was not the end user . . . .

Q: EG&G?
A: Oh, man.  Technically they are a contractor for NASA but they are also a user of the cranes.  They do all the maintenance on the cranes at NASA . . . .

Q: Goodgame?
A: General contractor.

Doc. 25-8, at 12-13.

Georgia Computer Systems Protection Act.  *Id.*[7]  Daugherty moved for summary judgment on all claims, *see* docs. 26, 27, 28, and the court now turns to the merits of this motion.

      i.     *Computer Fraud and Abuse Act*

Congress amended the Computer Fraud and Abuse Act ("CFAA"), effective September 26, 2008.  18 U.S.C. § 1030; *see* Pub. L. No. 110-326, § 204(a)(3). Daugherty's conduct that allegedly violated the CFAA began in late September or early October 2009, *see* doc. 25-7, at 25; therefore, the CFAA, as amended, applies to the conduct at issue here.  While the CFAA predominately operates as a criminal statute, *see P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 510 (3rd Cir. 2005), the Act provides a civil remedy as follows:

---

[7] Atlanta Crane's counter complaint also alleged tortious interference with business opportunities and sought attorney's fees pursuant to GA. CODE ANN. § 13-6-11.  *See* doc. 7, at 21-22.  However, Atlanta Crane voluntarily dismissed its claim for tortious interference, doc. 32, at 18.  Moreover, Atlanta Crane fails to defend its claim for attorney's fees.  *See generally* doc. 32.  While this Georgia statute allows a plaintiff to recover attorney's fees and costs "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," GA. CODE ANN. § 13-6-11, Atlanta Crane abandoned its claim for attorney's fees by failing to oppose Daugherty's summary judgment motion against this claim for fees.  *See* doc. 28, at 24-25; doc. 32; doc. 36, at 10.  *See also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (affirming summary judgment where plaintiff failed to defend a claim in the initial summary judgment response); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999) ("[T]hat assertions made in the pleadings ( e.g., complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for summary judgment.").  Therefore, the court **GRANTS** Daugherty's summary judgment motion on the claim for attorney's fees under GA. CODE ANN. § 13-6-11.

> Any person who suffers damage or loss by reason of a violation of
> this section may maintain a civil action against the violator to obtain
> compensatory damages and injunctive relief or other equitable relief.
> A civil action for a violation of this section may be brought only if the
> conduct involves 1 of the factors set forth in subclauses (I), (II), (III),
> (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation
> involving only conduct described in subsection (c)(4)(A)(i)(I) are
> limited to economic damages.

18 U.S.C. § 1030(g).  In turn, the § 1030(c)(4)(A)(i)(I)-(V) factors include:

> (I) loss to 1 or more persons during any 1-year period . . . aggregating
> to at least $5,000 in value;
>
> (II) the modification or impairment, or potential modification or
> impairment, of the medical examination, diagnosis, treatment, or care
> of 1 or more individuals;
>
> (III) physical injury to any person;
>
> (IV) a threat to public health or safety
>
> (V) damage affecting a computer used by or for an entity of the
> United States Government in furtherance of the administration of
> justice, national defense, or national security . . . .

*Id.*  The statute also defines "loss" as "any reasonable cost to any victim, including

the cost of responding to an offense, conducting a damage assessment, and

restoring the data, program, system or information to its condition prior to the

offense, and any revenue lost, cost incurred, or other consequential damages

incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Atlanta Crane and Daugherty dispute whether civil liability under the CFAA

is limited to violations of 18 U.S.C. § 1030(a)(5)(B) and one of the §

1030(c)(4)(A)(i)(I)-(V) factors, *see* doc. 28, at 12,[8] or whether a civil suit may be brought for a violation of *any* CFAA provision, such as § 1030(a)(4), so long as the conduct also violates one of the § 1030(c)(4)(A)(i)(I)-(V) factors, *see* doc. 32, at 8. Based on the plain language of the statute and persuasive case law, the court agrees with Atlanta Crane that civil liability under the CFAA may arise for any violation of the Act—not just conduct proscribed by § (a)(5)(B). While the Eleventh Circuit has not reached this issue, the Fifth Circuit found that:

> Section 1030(g) extends the ability to bring a civil action to any person suffering damage or loss under "this section," which refers to § 1030 as a whole, as subsection (g) does not proscribe any conduct itself. And although § 1030(g) refers to subsection (a)(5)(B), the statute does not limit civil suits to violations of § 1030(a)(5). Indeed, if Congress intended to limit civil actions in this manner, it could have simply provided that civil actions may only be brought for violations of subsection (a)(5).

*Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006); *P.C. Yonkers*, 428 F.3d at 512 (reaching the same conclusion). The Fifth Circuit decided *Fiber Systems* prior to the CFAA's 2008 Amendments, but the analysis still holds true. Section 1030(g), as amended, grants a civil remedy against violators "of this section," and as subsection (g) does not proscribe any conduct itself, this language must refer to § 1030 as a whole. Moreover, given the *Fiber Systems* holding,

---

[8] This argument derives from the language of 18 U.S.C. § 1030(c)(4)(A)(i) which imposes a certain criminal sentence for violations of § 1030(a)(5)(B) and one of the (I)-(V) factors referenced again in 18 U.S.C. § 1030(g). *See Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1045 (D. Minn. 2010) (asserting without discussing that civil liability under the CFAA arises only for violations of § (a)(5)(B)); *Mclean v. Mortg. One & Fin. Corp.*, No. Civ.04-1158(PAM/JSM), 2004 WL 898440, at *2 (D. Minn. April 9, 2004) (same).

Congress could have explicitly limited subsection (g) to violations of § (a)(5)(B). Finally, the amended CFAA eliminates any direct reference to § 1030(a)(5), thus further demonstrating that civil liability may arise from violation of any CFAA section.  *See e.g.*, *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1271-73 (M.D. Ala. 2010) (considering, but, ultimately, finding no violation of 18 U.S.C. §§ 1030(a)(2) and (4));  *Mortgage Now, Inc. v. Stone*, No. 3:09cv80/MCR/MD, 2009 WL 4262877, at *8 (N.D. Fla. Nov. 24, 2009) (holding that § 1030(g) "enables a plaintiff to bring a cause of action for any violation of the CFAA").

Accordingly, Atlanta Crane properly brings its CFAA claim under § 1030(a)(4) and the § 1030(c)(4)(A)(i)(I) factor.  To succeed on this claim, Atlanta Crane must show that Daugherty "[1] knowingly and with intent to defraud, [2] accesse[d] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value" such that the "loss" aggregated to at least $5,000 in value.  *See* 18 U.S.C. §§ 1030(g), 1030(a)(4), 1030(c)(4)(A)(i)(I).  *See also* doc. 32, at 8-10. While a jury question may exist as to Daugherty's intentions and his authorization for server access, the court finds that Atlanta Crane fails to sufficiently present evidence establishing a "loss" that aggregates to at least $5,000 in value.

Again, the CFAA defines two categories of "loss"—"costs to investigate and respond to a computer intrusion, and costs associated with a service interruption."  *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776

(S.D. Tex. 2010).  The CFAA's definition of "loss" does *not* include lost revenue from the possible misappropriation of "stolen" information.  *See Andritz, Inc. v. S. Maintenance Contractor, LLC*, 626 F. Supp. 2d 1264, 1267 (M.D. Ga. 2009) ("Plaintiff alleges that it lost revenue because Defendants copied Plaintiff's proprietary information and intellectual property and then used that information to steal customers away from Plaintiff.  While a remedy may exist for such conduct, Congress did not provide one in CFAA.").  *See also Volk v. Zeanah*, No. 608CV094, 2010 WL 318261, at *3 (S.D. Ga. Jan. 25, 2010) ("Losses not directly related to 'damage' of the accessed computer or network, such as revenue lost because a defendant used proprietary information and intellectual property to unfairly compete, or lost business opportunities resulting from a defendant's use of improperly gained information, are not the types of losses contemplated by the CFAA.").

In that regard, Atlanta Crane contends that it suffered losses "incurred to (a) examine the VPN and server, (b) determine what files had been copied and deleted, and (c) attempt to restore information and electronic data Plaintiff destroyed or deleted."  Doc. 32, at 10.  Assuming that Atlanta Crane did in fact incur these expenses, the court is still left with no evidence that such expenses amounted to $5,000.  *See* doc. 28, at 15.  The court has instead Bethel's testimony that he attempted to restore information and that Atlanta Crane used two different IT vendors—Radical Support and BlueWave— to recover the information that Daugherty allegedly deleted from the VPN server.  *See* doc. 25-8, at 7-8.

However, when specifically asked how much he paid for these services, Bethel stated that "I don't know.  I would have to look at that." *Id.* at 16.  Bethel subsequently asserted that it was "more than $1,000." *Id.*  Atlanta Crane provides the court with no other evidence of "loss" as defined by the CFAA.  *See* doc. 32, at 10.  Indeed, Atlanta Crane only offers conclusory statements and unsupported factual allegations that it meets the $5,000 threshold level of loss to the accessed network or server.  *See Ellis*, 432 F.3d at 1326.  Thus, while Atlanta Crane may have suffered damages, it fails to sufficiently establish the type and amount of "loss" required for civil recovery under the CFAA.  Therefore, taking all inferences in the light most favorable to Atlanta Crane, a reasonable jury could not find a $5,000 "loss."  As such, the court **GRANTS** Daugherty's summary judgment motion on Atlanta Crane's CFAA claim.[9]

### ii.    *Breach of Fiduciary Duty*

While serving as an Atlanta Crane sales representative, an agency relationship existed between Daugherty (agent) and Atlanta Crane (principal).  *See* doc. 28, at 17.  "'It is an agent's duty to act, in all circumstances, with due regard

---

[9] The Eleventh Circuit instructs that permissive counterclaims must have an independent federal jurisdictional basis.  *See East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n*, 888 F.2d 1576, 1578 (11th Cir. 1989).  While some courts have called this hardline rule into question after Congress adopted 28 U.S.C. § 1367 in 1990, *see Barr v. Hagan*, 322 F. Supp. 2d 1280, 1284 (M.D. Ala. 2004), here, Atlanta Crane's counterclaims retain independent subject matter jurisdiction and are properly before this court under 28 U.S.C. § 1331 (the federal CFAA claim) and 28 U.S.C. § 1367 (the state law claims form part of the same case or controversy as the CFAA claim).  While the court could dismiss Atlanta Crane's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), in the interest of judicial economy, the court will retain supplemental jurisdiction over these state law claims.

for the interests of his principal and to act with the utmost good faith and loyalty. Implicit in this duty is an obligation not to subvert the principal's business by luring away customers or employees of the principal, or to otherwise act in any manner adverse to the principal's interest.'" *Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1078 (Ala. 2006) (quoting *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) (internal citations omitted)).  The court finds a genuine issue of material fact as to whether Daugherty acted in a manner subversive to Atlanta Crane's interests while still employed with Atlanta Crane.  *See* doc. 32, at 11-13. Taking all inferences in the light most favorable to Atlanta Crane, a reasonable jury could find that Daugherty, in an act of bad faith, deleted sensitive and valuable information from Atlanta Crane's VPN server.  Atlanta Crane maintained business information such as contacts and project leads on its server, and, after Daugherty accepted a job with Gorbel, he allegedly removed and thereby deleted this information from the server.  *See* doc. 25-7, at 23.

Moreover, a genuine factual dispute exists as to Atlanta Crane's damages resulting from this alleged fiduciary breach.  *See* doc. 32, at 12-13; doc. 28, at 18. "'A claim alleging breach of fiduciary duty sounds in tort, and [a] necessary element to be proven in an action alleging breach of duty is damages.'" *Systrends, Inc.*, 959 So. 2d at 1075 (quoting *Hensley v. Poole*, 910 So. 2d 96, 106 (Ala. 2005) (internal citations omitted, alteration in original)).  Daugherty contends that Atlanta Crane "failed to prove any damages," doc. 28, at 18; however, at the summary judgment phase, the court disagrees.  Bethel testified that the

information Daugherty allegedly deleted contained business leads purchased by
Atlanta Crane which became "cold" due to delays caused by the deletion, doc. 25-
8, at 9, doc. 25-9, at 3-5; that Daugherty used this information to steer business
towards Atlanta Crane's Alabama competitors, *id.* at 16-17; and that Atlanta
Crane's inability to retrieve this deleted information prohibited it from obtaining a
full purchase price for certain projects, doc. 25-8, at 18; doc. 25-9, at 7.  Assuming
that a jury credits this testimony, it could find that Daugherty's alleged fiduciary
breach caused damages to Atlanta Crane; therefore, the court **DENIES**
Daugherty's summary judgment motion as it relates to a fiduciary breach.

     *iii.*   *Breach of Contract*

     Atlanta Crane contends that "Daugherty breached his terms and conditions
of his employment with Atlanta Crane by breaching his agreement to not disclose
to third parties confidential information and by misappropriating Atlanta Crane's
property."  Doc. 7, at 17.  Daugherty moves for summary judgment arguing that no
such contract existed, or, in other words, that Atlanta Crane fails to provide
sufficient evidence establishing an essential element of this claim.  Doc. 28, at 18.
*See also Reynolds Metals*, 825 So. 2d at 105-06 ("The elements of a
breach-of-contract claim under Alabama law are (1) a valid contract binding the
parties; (2) the plaintiffs' performance under the contract; (3) the defendant's
nonperformance; and (4) resulting damages.").  In response, Atlanta Crane
contends that Daugherty "testified under oath he received and signed an
Employee's Acknowledgment form from SOI (Strategic Outsourcing International

– Atlanta Crane's PEO for payroll, human resources, etc . . .).  The Plaintiff signed

Employee Acknowledgment form states Plaintiff is aware of all of Atlanta Crane's

policies and procedures and shall abide by them."  Doc. 32, at 13-14 (citing 25-5,

at 5-10; doc. 27-8, at 84).

The court finds Atlanta Crane's argument unpersuasive for two reasons.

First, no reasonable jury could find that the Employee Acknowledgment form

Daugherty signed, *see* doc. 27-8, at 84, contains the obligations that Atlanta Crane

alleges.  The document provides in pertinent part:

> I have received the SOI Assigned Employee Handbook.  My
> employment through SOI is at will and I or SOL can terminate the
> relationship at any time for any reason.  Neither this
> Acknowledgment nor the Handbook creates a contract of employment
> and the Handbook can be altered, discontinued, and interpreted by
> SOI at any time without notice or consideration.

*Id.*  The court simply refuses to find that such language in the Acknowledgment

form could plausibly be read as establishing that "Plaintiff is aware of all of

Atlanta Crane's policies and procedures and shall abide by them."  *See* doc. 32, at

13-14.  At most, the form demonstrates that Daugherty is aware of SOI's policies;

however, Atlanta Crane provides no logical connection between acknowledging

SOI's employee handbook and contracting to adhere to Atlanta Crane's "policies

and procedures."

Second, even if the court assumes that Daugherty did agree to Atlanta

Crane's "policies and procedures," the record contains no evidence, beyond

conclusory allegations, pertaining to the substance of these "policies and

procedures."  Bethel references an Atlanta Crane "employee manual" in his deposition, *see* doc. 25-9, at 3, 8; yet, Atlanta Crane only produces the Acknowledgment form which purportedly "represents that [Daugherty] received the handbook" or "employee manual."  *Id.*  The court refuses to allow Atlanta Crane to proceed on a breach of contract claim regarding the "conditions of [Daugherty's] employment," doc. 32, at 14, when Atlanta Crane fails to offer more than a scintilla of evidence defining the agreement's terms or that such agreement actually existed.  *See Celotex Corp.*, 477 U.S. at 322; *Walker v. Darby*, 911 F.2d at 1577.  The court therefore **GRANTS** Daugherty's summary judgment motion on the breach of contract claim.

### iv.    Georgia Trade Secrets Act

Atlanta Crane alleges that Daugherty violated the Georgia Trade Secrets Act by removing confidential information from the VPN server.  Doc. 7, at 18-19 (citing GA. CODE. ANN. §§ 10-1-760).[10]  Georgia's Trade Secrets Act requires a plaintiff to "show that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret."  *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT*, 139 F.3d 1396, 1410 (11th Cir. 1998) (citing GA. CODE. ANN. §§ 10-1-761, 763).  The Act defines "trade secret" as:

> [I]nformation, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a

---

[10] Georgia's Trade Secrets Act specifically provides that "[i]n no event shall a contract be required in order to maintain an action or to recover damages for misappropriation of a trade secret."  GA. CODE. ANN. § 10-1-763(c).

program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

(A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

GA. CODE. ANN. § 10-1-761(4).  Bethel testified that Daugherty's Outlook "contacts," the information allegedly deleted, contained confidential business leads regarding current contract negotiations and future sales opportunities.  *See* doc. 25-7, at 23; doc. 25-8, at 9.  Determining whether "a particular type of information constitutes a trade secret is a question of fact," and the court concludes that a reasonable jury could find that the information Daugherty removed from Atlanta Crane's VPN server meets this statutory definition.  *See* *Camp Creek*, 139 F.3d at 1411; *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 698-701 (S.D. Ga. 1997) (discussing definition of "trade secret" and finding that key is whether information is readily ascertainable by outside parties).

Daugherty also contends that Atlanta Crane neglected to take reasonable efforts to maintain secrecy, doc. 28, at 21; however, Atlanta Crane provides sufficient evidence for a jury to find that the information Daugherty removed "[i]s

the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  GA. CODE. ANN. § 10-1-761(4)(B); *see also Ga. Dep't of Natural Res. v. Theragenics Corp.*, 545 S.E.2d 904, 906 (Ga. 2001) ("A business entity does not lose the right to assert that material is a trade secret unless it does not make reasonable efforts to prevent disclosure to those to whom it is not otherwise legally required to divulge the information.").  Here, Atlanta Crane did not publish the information in question to the public but utilized a password protected internal company server, doc. 25-8, at 4.  Also, Bethel testified to repeatedly reminding employees against dissemination of confidential information, doc. 25-9, at 8. Whether such actions were, in fact, reasonable to maintain secrecy is a jury question.  *See also Paramount Tax & Accounting v. H&R Block E. Enters., Inc.*, 683 S.E.2d 141, 148 (Ga. Ct. App. 2009).

Atlanta Crane's evidence also supports a finding that Daugherty "misappropriated" these trade secrets.  The Act defines "misappropriation" as:

> (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

> (i) Used improper means to acquire knowledge of a trade secret;

> (ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

> > (I) Derived from or through a person who had utilized improper

means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

GA. CODE. ANN. § 10-1-761(2).  The Act also defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means."  GA. CODE. ANN. § 10-1-761(1).  Bethel's deposition testimony that Daugherty used Atlanta Crane's "trade secrets" to subsequently aid Atlanta Crane competitors while working for Gorbel arguably constitutes disclosure of trade secrets acquired under circumstances of secrecy or limited use, *see* doc. 25-9, at 7-8.  Accordingly, the court **DENIES** Daugherty's summary judgment motion on the alleged violation of the Georgia Trade Secrets Act.  The jury must decide the factual issues of (1) whether "trade secrets" are involved, (2) whether Daugherty improperly acquired and disclosed these trade secrets, and (3) if so, the resulting damages suffered by Atlanta Crane.

     *v.*     *Georgia Computer Systems Protection Act*[11]

---

[11] The parties label this code section the "Georgia Computer Theft Act."  However, the correct short title is the "Georgia Computer Systems Protection Act."  GA. CODE ANN. § 16-9-90.

Atlanta Crane claims that Daugherty's actions constitute a violation of the Georgia Computer Systems Protection Act.  Doc. 7, at 19-20.  This Act prohibits:

> Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of:
>
> (1) Taking or appropriating any property of another, whether or not with the intention of depriving the owner of possession;
>
> (2) Obtaining property by any deceitful means or artful practice; or
>
> (3) Converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property

GA. CODE ANN. § 16-9-93(a).[12]  Because this Act defines "without authority" as including "the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network," GA. CODE ANN. § 16-9-92(18), the court finds that genuine issues of material fact preclude summary judgment.  There is evidence that Atlanta Crane authorized Daugherty to access the company's VPN server, but there is also evidence that Atlanta Crane did not authorize Daugherty to appropriate Atlanta Crane's property during his employment with Gorbel.  *See* doc. 25-9, at 7-8; *cf. Stargate Software Int'l, Inc. v. Rumph*, 482 S.E.2d 498, 504 (Ga. Ct. App. 1997).

---

[12] While this statute generally imposes criminal liability, subsection (g) allows parties to seek civil relief for damages.  GA. CODE ANN. § 16-9-93(g) ("Any person whose property or person is injured by reason of a violation of any provision of this article may sue therefor and recover for any damages sustained and the costs of suit.").

Ultimately, a jury is best suited to decide the factual disputes regarding Daugherty's access of Atlanta Crane's VPN server, the intentions for such access, and whether Atlanta Crane suffered any resulting damages.  Accordingly, Daugherty's summary judgment motion on the Georgia Computer Systems Protection Act claim is **DENIED**.

## IV.   CONCLUSION

For the aforementioned reasons, Daugherty may proceed to trial on his claims against Atlanta Crane for breach of contract and violation of the Alabama Sales Representative's Commission Contracts Act.  Atlanta Crane may proceed on its counterclaims against Daugherty for breach of fiduciary duty and violation of the Georgia Trade Secrets Act and the Georgia Computer Systems Protection Act.

These remaining matters are set for a pretrial conference on **February 22, 2012 at 11:00 a.m.** in the chambers of the undersigned at the **Hugo L. Black United States Courthouse in Birmingham, Alabama**, and trial on **April 16, 2012 at 9:00 a.m.** at the **Hugo L. Black United States Courthouse in Birmingham, Alabama**.

**DONE** this 12th day of January, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE